**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| THERMAL SCALPEL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:08-cv-312 |
| | § | |
| COVIDIEN LTD.; TYCO HEALTHCARE | § | **JURY TRIAL DEMANDED** |
| GROUP LP; BOSTON SCIENTIFIC | § | |
| CORPORATION; BOSTON SCIENTIFIC | § | |
| SCIMED, INC.; C.R. BARD, INC.; | § | |
| MEDTRONIC, INC.;  MEDTRONIC USA, | § | |
| INC.; SMITH & NEPHEW, INC.; ST. JUDE | § | |
| MEDICAL, INC.; and ST. JUDE MEDICAL | § | |
| S.C., INC. | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF'S OPPOSITION TO BOSTON SCIENTIFIC'S MOTION TO
TRANSFER VENUE PURSUANT TO FED. R. CIV. P. 1404(a)**

Plaintiff Thermal Scalpel filed this lawsuit against Defendants in this District because (1) all Defendants commit patent infringement here, and (2) it is a venue well-known for its expertise in patent cases and its prompt and just resolution of those cases.  There is no dispute that the Court has jurisdiction and that venue is proper.  Instead, Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively "BSC"), as sole moving defendants, seek to transfer this lawsuit to the Northern District of California (the "NDCA") for convenience.  BSC alleges that certain third party witnesses, BSC employees, and documents are purportedly located there.  BSC's arguments ring hollow, however, because they are factually incorrect and ignore other factors that do not make litigating this dispute in the NDCA any more convenient, let alone *clearly* more convenient, than litigating in this District.  Thus, Plaintiff's choice of venue should be respected.

## I.      BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiff, a Texas limited liability company, filed this lawsuit on August 7, 2008, alleging infringement of U.S. Patent No. 6,726,683 against several Defendants located throughout the U.S.[1]  All are alleged to have committed patent infringement through the sale and distribution of various medical devices, and the provision of services relating to those devices, to customers residing in this District.[2]  BSC admits that its accused products are actually sold in this District.[3]

BSC has moved to transfer this case to the NDCA pursuant to 28 U.S.C. § 1404(a).  BSC argues, among other things, that venue is more convenient because the inventor and potential "unnamed co-inventors" reside there.[4]  BSC devotes a considerable amount of time arguing that certain persons were omitted from the inventorship of the '683 patent and claiming that the inventor did so with "deceptive intent."[5]  BSC's inventorship argument, however, ignores critical facts present in the file history.

The '683 patent, issued in 2004, claims priority to an application filed by Dr. Robert Shaw, John Cage, and Paul Stoft in 1967.[6]  During prosecution, *all* of the originally listed inventors – Messrs. Shaw, Cage, and Stoft, along with Al Smith, a patent attorney, and Coe Bloomberg, the patent attorney prosecuting the patent application, filed documents with the USPTO affirming that Dr. Shaw was the sole inventor of the '683 patent.[7]  As stated therein, the

---

[1] Plaintiff's Original Complaint, Dkt. No. 1.
[2] Id. at ¶¶ 15 and 18.
[3] BSC's Motion at p. 2.
[4] BSC's Motion at pp. 5-6.
[5] See BSC's Motion at pp. 5-8.
[6] Plaintiff's Original Complaint, Dkt. No. 1, Exh. A thereto.
[7] Exh. A (excerpts from the '683 patent file history).  All references to Exhs. A-I herein refer to the exhibits attached to Exh. 1 (Declaration of Barry Bumgardner in Support of Plaintiff's Opposition to Defendant Boston Scientific's Motion to Transfer Venue Pursuant to Fed. R. Civ. P. 1404(a)).

foregoing parties took this action to correct an honest mistake that was made at the time of filing the original parent patent application.[8]

These facts are in sharp contrast to the picture painted by BSC — that Dr. Shaw "with improper motive" and "deceptive intent" "disenfranchised" his two colleagues.[9]  To hear BSC's version of events, one would think that Dr. Shaw snuck into the Patent Office with an eraser and removed his colleagues' names from the pending patent application.  Such is not the case.

BSC also identifies seven potential third party witnesses located in the NDCA.  Two of the listed witnesses, however, are deceased, one is a practicing attorney that boasts BSC as a marquee client, one's whereabouts are unknown, and one has agreed to appear at trial in this District.[10]  The remaining two potential witnesses will be in their 90s by the time of trial and will be asked to testify about sworn declarations submitted to the USPTO over 30 years ago.  BSC fails to show that the remaining two witnesses would need to travel to Texas for trial, would refuse to do so, or would not appear by videotaped deposition.

BSC also argues that the NDCA is more convenient for its employee witnesses than for the employees to travel to this District for trial.  Less than four months ago, however, BSC filed a ten patent infringement lawsuit in this District against Medtronic, which would presumably require BSC's employees to travel to this District.[11]  Such positions are incongruous.

---

[8] Id.

[9] See BSC's Motion at pp. 5 and 14.

[10] See Exhs. B (printout showing David Packard died in 1996), C (printout showing Bernard M. Oliver died in 1995), and D (printout from Fenwick & West LLP website: attorney Albert C. Smith's attorney profile).  See also Exh. 2 (Declaration of Robert F. Shaw in Support of Plaintiff's Opposition to Defendant Boston Scientific's Motion to Transfer Venue Pursuant to Fed. R. Civ. P. 1404(a) ("Shaw Decl."), at ¶¶ 4-6).

[11] See Exh. E (BSC's Complaint, Civ. No. 6:08cv320, filed August 12, 2008).

Because BSC does not show "good cause" for this case to be transferred to the NDCA, Plaintiff's choice of forum should be respected and BSC's motion should be denied in its entirety.

## II.   APPLICABLE STANDARD

Under Section 1404(a), "for the convenience of the parties and the witnesses" and "in the interest of justice," the Court may transfer an action to any other district where the plaintiff could have filed suit.  28 U.S.C. § 1404(a).  The defendant must show "good cause" for transfer, which means that a defendant must satisfy the statutory requirements and demonstrate that the transferee venue is *clearly* more convenient for the parties and witnesses.  *In re Volkswagen of Am., Inc. (In re Volkswagen II)*, No. 07-40058, 2008 U.S. App. LEXIS 21377, at *26 (5th Cir. Oct. 10, 2008); *see* 28 U.S.C. § 1404(a).  When the transferee venue is not clearly more convenient, then the reviewing court should respect the plaintiff's choice.  *In re Volkswagen II*, 2008 U.S. App. LEXIS 21377, at *26.

And "while neither conclusive nor determinative, the plaintiff's choice of forum is clearly a factor to be considered" in determining a §1404(a) motion to transfer.  *In re Horseshoe Entm't*, 337 F.3d 429, 434-35 (5th Cir. 2003); *see also In re Volkswagen II*, 2008 U.S. App. LEXIS 21377, at *25-26 (plaintiff's choice of venue is taken into account as it places a significant burden on the movant to show good cause for the transfer).

In deciding a transfer motion, the district court must consider the private and public interest factors enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).  S*ee In re Volkswagen II*, 2008 U.S. App. LEXIS 21377 at *27.  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* This last catch-all private interest factor has been distilled to include the cost of obtaining witnesses and other trial expenses, the possibility of delay and prejudice if transfer is granted, and the situs of material events and place of the alleged wrong. *See Roulston v. Yazoo River Towing, Inc.*, No. 03-2791, 2004 U.S. Dist. LEXIS 14388, at *3 (E.D. La. July 26, 2004).

The public interest factors to be considered are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen II*, 2008 U.S. App. LEXIS 21377 at *27-28.

## III.  DISCUSSION OF THE GILBERT FACTORS

Upon close analysis of the private and public factors, the Northern District of California is not a more convenient district, let alone a *clearly* more convenient district.

### A.  Plaintiff's Choice of Forum.

While not controlling or determinative, a plaintiff's choice of forum is a still to be considered. *In re Horseshoe Entm't*, 337 F.3d at 434. It is BSC's burden to override Plaintiff's forum choice by establishing how transfer to the NDCA is *clearly* more convenient for the parties involved, non-party witnesses, expert witnesses, and in the interest of justice. *In re Volkswagen II*, 2008 U.S. App. LEXIS 21377, at *26; *see also Aloft Media, LLC v. Adobe Syst. Inc.*, No. 6:07-cv-355, 2008 U.S. Dist. LEXIS 23601, at *11 (E.D. Tex. Mar. 25, 2008).

Here, Plaintiff chose to bring suit in the Eastern District of Texas. Plaintiff is not a resident of the ostensible transfer district. Because BSC fails to meet its burden, Plaintiff's forum choice should be respected.

### B.  Private Interest Factors.

#### 1.  Availability of Compulsory Process to Secure Attendance of Witnesses.

BSC's Motion focuses primarily on its theory that the removal of two inventors during the prosecution of the '683 patent was improper and the necessity to have the individuals associated with this act available at trial.[12]  BSC is making a mountain out of a molehill as it has done nothing more than scour hundreds of pages of a file history that spans 35 years to find an imagined issue to support ties to the NDCA.   In short, BSC is alleging that at least five individuals - the prosecuting patent attorney, the three original inventors, and Al Smith (another patent attorney), engaged in a conspiracy to defraud two of the co-conspirators, with the cooperation of the defrauded co-conspirators.[13]  Such a tale doesn't make sense on its face and should be judged accordingly.

As part of this inventorship story, BSC lists seven individuals that are purportedly located in the NDCA that may offer testimony on the issue – Messrs. Packard, Oliver, Shaw, Johannsmeier, Smith, Cage, and Stoft.[14]   According to BSC, the location of these individuals warrants transferring this case.  But, a variety of factors illustrate why BSC is wrong.

First, a simple Internet search shows that Mr. Packard died in 1996[15] and that Mr. Oliver died in 1995[16] and, thus are not factors in this transfer analysis.

Another simple Internet search shows that Albert Smith is now a partner in the intellectual property group of Fenwick & West LLP, a major California law firm, and personally

---

[12] BSC's Motion at pp. 5-8, 10-12.
[13] See BSC's Motion at pp. 5-8; see also Exh. A.
[14] BSC's Motion at pp. 10-11.
[15] Exh. B.
[16] Exh. C.

claims Boston Scientific Corporation as a representative client.[17]   BSC should not have any trouble convincing its outside counsel to travel to Texas to testify on its behalf.

As to Mr. Johannsmeier, BSC provides no evidence that this individual is still located in California.[18]   Thus, given the nature of BSC's analysis with respect to Messrs. Packard, Oliver, and Smith, BSC's unsupported allegations that this individual is located in the NDCA should be given no weight.

With respect to Messrs. Stoft and Cage, BSC has not demonstrated that they will need to travel to Texas to testify, would be unwilling to do so if asked, or would not appear by videotaped deposition.  In denying a motion to transfer in *Symbol Technologies*, the Court noted that the parties could use videotaped testimony if a witness could not be compelled to appear at trial.  *Symbol Tech., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006); *see also Computer Acceleration Corp. v. Microsoft Corp.,* No. 9:06-CV-140, September 18, 2006 Order Denying Defendant's Motion to Transfer Venue, at p. 6 (rejecting witness location as basis for transfer since videotaped testimony can replace live testimony, especially for witnesses "whose credibility cannot seriously be challenged").[19]

Further, a review of the testimony that BSC would seek to elicit from Messrs. Stoft and Cage shows that it concerns events that will have occurred more than 35 years prior to trial.[20]

---

[17] Exh. D.
[18] See BSC's Motion at p. 11.
[19] See Exh. F (copy of *Computer Acceleration* Order).
[20] Of note, the patent laws allow for a district court to correct inventorship of a patent during litigation if the errors that led to the misjoinder of inventors were an honest mistake.  *See* 35 U.S.C. § 256.  Given that all of the alleged "unnamed co-inventors" and two attorneys were in agreement on the issue, there is no evidence that, if a mistake was made, it was done so with improper motive.  Assuming *arguendo* that an inventorship exists, the Court could correct it during this litigation without invalidating the patent.  *See id.*

After 35 years, the best evidence on the inventorship topic is the declarations submitted by Messrs. Stoft and Cage at that time, which are available in the '683 patent file history.[21]

Finally, with respect to the sole inventor of the '683 patent, Dr. Shaw has submitted a declaration stating that he is willing to travel to Texas for a trial in this matter, thereby removing his possible non-attendance as a reason to transfer this lawsuit.[22]  *See Computer Acceleration,* No. 9:06-CV-140, Order at p. 4 (where inventors and patent prosecutor "submitted declarations disclaiming any inconvenience and agreeing to appear voluntarily" in this District, their locations did not weigh in favor of transfer).[23]

BSC has not demonstrated that transferring this case to the NDCA would be clearly more convenient for the third-party witnesses it has identified.  And given that much, if not all, of the testimony elicited would be on topics already discussed in detail in the '683 patent's file history, this factor is neutral, at best.

### 2.   Relative Ease of Access to Source of Proof.

BSC argues that the location of certain documents justifies moving this case to the NDCA.   But, the location of documents rarely provides a basis for transfer because most documents are "easily transportable in paper or electronic form." *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 675 (E.D. Tex. 2006); *see also Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006) (denying motion to transfer based on location of documents, where documents were to be exchanged electronically).   The Court observed in *Good Sportsman*, "[P]atent cases typically involve battles of documents and technical experts scattered across the nation." *Good Sportsman Mktg. LLC v. Testa Assoc., LLC*,

---

[21] See e.g. Exh. A.
[22] Exh. J (Shaw Decl., at ¶¶ 4-6).
[23] See Exh. F.

No. 6:05CV90, 2005 U.S. Dist. LEXIS 29182, at *15 (E.D. Tex. Sept. 1, 2005).  The same is true in this case.

BSC further alleges that the documents likely present in the NDCA are anticipated to be in paper not electronic form and would need to be reviewed in California.[24]  Of note is that if an on-site inspection of documents is required, BSC's litigation counsel has a Silicon Valley office to handle the task.[25]  This factor is neutral at best and does not support transfer.

Moreover, many of the types of documents BSC seeks may not exist.  For example, the documents related to conception, reduction to practice, diligence, and derivation listed by BSC in its brief are going to be over 40 years old.  Most record retention policies, both for corporations and individuals, would have had these documents thrown out long ago.  If such documents do exist, they are likely to be few in number and, accordingly, not a significant factor in transferring this case.

### 3.  Cost of Attendance of Willing Witnesses,

BSC lists four BSC employees located in the NDCA who are potential witnesses and states that moving this lawsuit there would be more convenient for those individuals.[26]  BSC does not, however, discuss this convenience factor as it relates to any of the other non-moving defendants as such an analysis reveals that this factor is overwhelming against it.  While the other defendants do not oppose this motion, neither do they join it.[27]  As such, the Court must analyze the convenience/inconvenience BSC's proposed transfer will have as to these parties. *See, e.g., Applica Consumer Prods., Inc. v. Doskocil Mfg. Co.*, No. 2:07-CV-73, 2008 U.S. Dist. LEXIS 25945, at *5-6 (E.D. Tex. Mar. 31, 2008) (analyzing convenience of non-moving

---

[24] BSC's Motion at p. 5.
[25] See Exh. G.
[26] BSC's Motion at pp. 4-5.
[27] See BSC's Motion at p. 1.

defendants and their witnesses).  Every one of the defendants' corporate headquarters is east of the Mississippi River and closer to this District than the NDCA.[28]   Moving the lawsuit to the NDCA may be more convenient for some BSC witnesses, but it imposes a much larger collective burden on the other defendants in terms of travel time and related costs.

In addition, less than four months ago, BSC filed a patent infringement suit against Medtronic in this District.[29]   To Plaintiff's knowledge, neither BSC nor Medtronic has significant R&D or manufacturing operations in Texas that are related to the patents in suit, and none of the inventors of the ten patents asserted by BSC are listed as being in Texas (in fact, most are apparently in the NDCA, as will be discussed in more detail below).[30]   Thus, BSC chooses to avail itself of this forum and subject its employee witness to the inconvenience of traveling to this District when it is its own patent litigation, but it complains when it must defend a suit in the same District.

Given the foregoing, the factor of the costs of attendance of willing witnesses weighs strongly in favor of retaining this suit in the Eastern District of Texas.

### 4.   The Possibility of Delay and Prejudice if Transfer Is Granted.

"The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis 'only in rare and special circumstances and when such circumstances are established by clear and convincing evidence.'"  *Medtronic, Inc. v. Cordis Corp.*, No. 2:07-cv-88, 2008 U.S. Dist. LEXIS

---

[28] Of the remaining defendants, two are headquartered in Massachusetts (Covidien and Smith & Nephew), two in Minnesota (St. Jude and Medtronic), and two in New Jersey (Tyco and CR Bard). Plaintiff's Original Complaint, Dkt. No. 1, at ¶¶ 2-3, 6-13.  Defendants Arthrocare Corporation and Arthrocare Medical Corporation have been dismissed.  Order on Plaintiff's Notice of Voluntary Dismissal Without Prejudice as to Arthrocare Corp. and Arthrocare Medical Corp., Dkt. No. 56.
[29] Exh. E.
[30] See Exh. H (copies of the first page of each patent asserted by BSC against Medtronic in Civ. No. 6:08cv320).

25942, at *9 (E.D. Tex. Mar. 31, 2008) (quoting *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 834-35 (E.D. Tex. 2002)).  This is not a rare and exceptional case.

### C.  Public Factors.

#### 1.  The Administrative Difficulties Flowing from Court Congestion.

BSC admits that the docket in the NDCA is approximately six months slower than the one in this District.  BSC glosses over this fact and says it doesn't make a difference.  Plaintiff respectfully disagrees.  A six month delay in getting to trial is important to Plaintiff and is one of the reasons Plaintiff filed in this District.  Accordingly, this factor is in Plaintiff's favor.

#### 2.  The Local Interest in Having Localized Interest Decided at Home.

BSC infringes the '683 patent by virtue of its sale and distribution of medical devices throughout the United States, including in the Eastern District of Texas.[31]  BSC admits that it sells the accused devices to customers in this District.[32]  Residents of the Eastern District "have significant interest in the enforcement of federal patent laws against infringement activities." *Cummins-Allison Corp. v. Glory Ltd.*, No. 2-03-CV-358, 2004 U.S. Dist. LEXIS 13839, at *20-21 (E.D. Tex. May 26, 2004) (denying motion to transfer).  And "[t]his is at least as significant" as that of residents of other districts; thus, this factor "do[es] not weigh in favor of transfer."  *Id.*

BSC states that only 0.1% of the devices Plaintiff accused of infringing the '683 patent are sold in this District and that this fact favors the transfer of this lawsuit to the NDCA.[33]  BSC implies, but never states, that sales of the accused devices are higher in the NDCA.  Given that there is no evidence of greater sales (or any sales) in the NDCA, that "only" 0.1% of BSC's infringing products are sold in this District is immaterial.

---

[31] Plaintiff's Original Complaint, Dkt. No. 1, at ¶¶ 15 and 18.
[32] See Motion at p. 2.
[33] See Motion at p. 2.

But even assuming that BSC's sales of accused devices are higher in the NDCA, that number is likewise without meaning. BSC's infringing products are being sold and used here. Because BSC's infringements impact this District and residents of this District have a strong interest in the enforcement of patent laws, this is not an unrelated forum that would burden the citizens of this District unnecessarily. Moreover, BSC has not shown there exists any greater burden on a potential Eastern District jury, or any lesser burden on a jury in the NDCA. This factor does not weigh in favor of transfer.

### 3. The Courts' Familiarity with Controlling Law and Conflicts of Law are Non-Factors.

This action is brought under the federal patent laws, and the Federal Circuit's law governs the interpretation of those laws in this District and in the NDCA. *See Medtronic*, 2008 U.S. Dist. LEXIS 25942, at *10. The Eastern District is equally equipped to apply federal law; thus, no conflict of law exists. *Id.* These remaining factors do not favor transfer.

## IV. THE INTEREST OF JUSTICE

In this particular case, justice will be served by retaining this case in the Eastern District. In August of this year, BSC filed a lawsuit in this District asserting ten patents against Medtronic, a major BSC competitor[34] In a case of remarkable similarities, 6 of the 9 inventors of the patents BSC asserts against Medtronic are located in the NDCA, and a Los Angeles law firm prosecuted 8 out of the 10 asserted patents.[35] In addition, one Medtronic defendant is located in the NDCA and the remaining two are in Minnesota.[36] Thus, the high-level venue facts present in the BSC/Medtronic case are nearly identical to the ones upon which BSC bases its present motion to transfer for convenience.

---

[34] See Exh. E.
[35] See Exhs. H and I (printout from Fulwider Patton LLP website), respectively.
[36] See Exh. E.

Plaintiff respectfully submits that if BSC's motion to transfer is allowed, given that BSC so recently filed a large patent infringement case with similar ties to Texas, justice will not be served.  If BSC is going avail itself of what Thermal Scalpel and, apparently, BSC, agree is a good forum to resolve patent disputes, it should not be allowed to complain that the same forum is inconvenient when it suits them.

## V.     CONCLUSION

BSC has failed to demonstrate that the conveniences of the parties or the public interest are significant enough to warrant a change of venue. For these reasons, BSC's motion to transfer should be denied.


**Dated:   December 10, 2008.**                    Respectfully submitted,

/s/ Barry J. Bumgardner
Edward R. Nelson, III
Texas State Bar No. 00797142
Attorney-in-Charge
Barry J. Bumgardner
Texas State Bar No. 00793424
Brent N. Bumgardner
Texas State Bar No. 00795272
Steven W. Hartsell
Texas State Bar No. 24040199
NELSON BUMGARDNER CASTO, P.C.
5601 Bridge Street, Suite 300
Fort Worth, Texas 76112
(817) 377-9111
(817) 377-3485 (fax)
enelson@nbclaw.net
barry@nbclaw.net
bbumgardner@nbclaw.net
shartsell@nbclaw.net

Eric M. Albritton
Texas State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, TX  75606
(903) 757-8449
(903) 758-7397 (fax)
ema@emafirm.com

T. John Ward, Jr.
Texas State Bar No. 00794818
WARD & SMITH LAW FIRM
111 W. Tyler Street
Longview, Texas  75601
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF
THERMAL SCALPEL LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2008, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Barry J. Bumgardner