IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| THERMAL SCALPEL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:08-CV-312 |
| | § | |
| COVIDIEN LTD, et al., | § | |
| | § | |
| Defendants. | § | |

**O R D E R**

Before the Court are Boston Scientific's (BSC) Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 84), Thermal Scalpel's Response (Dkt. No. 90), BSC's Reply (Dkt. No. 91), and Thermal Scalpel's Sur-Reply (Dkt. No. 92). Also before the Court is Thermal Scalpel's Supplemental Brief and Evidence Opposing Transfer (Dkt. No. 117). The Court heard oral argument on this Motion on February 12, 2009. *See* Dkt. No. 123 (transcript). After considering the pleadings and arguments of counsel in light of the relevant case law, the Court finds BSC's Motion should be **DENIED**.

In this case, Thermal Scalpel has sued BSC and several other defendants for patent infringement. Dkt. No. 1, at 5. Thermal Scalpel alleges that BSC and the other defendants infringe its medical device patent, U.S. Patent No. 6,726,683 ('683 Patent), which is directed to an electrically heated surgical instrument. *Id.* BSC's Motion asks the Court to transfer the case to the Northern District of California (NDCA) under 28 U.S.C. § 1404(a). Dkt. No. 84, at 4. The other defendants in the case neither join nor oppose BSC's Motion. *Id.*

# I. LEGAL PRINCIPLES

Title 28, section 1404(a) of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008). The Supreme Court of the United States has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Fifth Circuit has made clear that the first "threshold" determination a district court must make under § 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). After such a determination, the district court must then consider the convenience of the parties and witnesses in both forums. *Id.*; *see also Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *Bolt v. Toyota Indus. Corp.*, 351 F. Supp. 2d 597, 599 (E.D. Tex. 2004).

A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Volkswagen I*, 371 F.3d at 203. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical

problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)); *TS Tech*, 551 F.3d at 1319. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper*, 454 U.S. at 341 n.6); *see also TS Tech*, 551 F.3d at 1319.

A plaintiff has a "well-established" right to choose his forum. *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999) (citing *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983)); *see Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (noting that the plaintiff's choice of venue is "highly esteemed"). Accordingly, under § 1404(a), the defendant has the burden to demonstrate that transfer is warranted. *Time*, 366 F.2d at 698. With § 1404(a) analysis, however, the plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314-15. Instead, the plaintiff's choice of venue contributes to the defendant's burden— to prove that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *Id.* at 315; *TS Tech*, 551 F.3d at 1319. Furthermore, although the private and public interest factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive" and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

## II. DISCUSSION

As to the threshold "jurisdictional" issue, BSC contends this case could have been brought in the NDCA because the "business unit that develops, manufactures, and sells the specifically accused Boston Scientific electrophysiology products is located there." Dkt. No. 84, at 12. Further,

argues BSC, the remaining defendants are all "major corporations with sales and presences throughout the United States." Thermal Scalpel does not contest BSC on this issue and the Court has no reason to believe this case could not have been brought in BSC's proposed venue. *See* Dkt. No. 90; 28 U.S.C. §§ 1331, 1338, 1391, 1400(b). Therefore, the Court proceeds to the second inquiry under § 1404(a)—the convenience factors.

**A.      Private Interest Factors**

   *1.      Sources of Proof*

Despite technological advances that undoubtedly reduce the relative inconvenience of transporting documents across the country, this factor must still be considered. *Volkswagen II*, 545 F.3d at 316. This factor almost invariably turns on which party will most likely have the greater volume of relevant documents and their presumed physical location in relation to the venues under consideration. *See, e.g.*, *Volkswagen II*, 545 F.3d at 314-15.

In this case, the sources of proof are located around the country. BSC points to documents located in the NDCA that relate to some of its products. Dkt. No. 84, at 16. BSC also states that prosecution documents related to the asserted patent are likely located in the Northern District of California as that is where the inventor and prosecution firm are located. *Id.* Plaintiff responds that the prosecution documents to which BSC refers likely do not exist as many of them will be in excess of 40 years old. Dkt. No. 90, at 9. The Court additionally notes that documents related to products developed by the other Defendants' are likely located across the country, as indicated by the location of their corporate headquarters and witnesses related to development, marketing, manufacture, and sale. *See* Dkt. No. 90, at 10 n.28 (noting that of the remaining defendants other than BSC, two are headquartered in Massachusetts, two in Minnesota, and two in New Jersey); Dkt. No. 117, Exs. J-N

(initial disclosures by defendants). Further, BSC likely has relevant documents located at its corporate headquarters, which is in Massachusetts, and perhaps at other locations that may be involved in the distribution, marketing, and sale of the accused BSC products.

In weighing this factor, the Court must consider the location of *all* documents and not just those involving the movant. In so doing, the Court finds that although transfer to NDCA would provide greater access to the majority of BSC documents and perhaps some documents related to the asserted patent, NDCA would at the same time decrease availability to those documents related to the other defendants products as they are further from NDCA than from this District. That is, a transfer to NDCA would make some documents more accessible but would also make many others less accessible. Thus, the availability of sources of proof factor does not weigh in favor of transfer.

*2.     Availability of Compulsory Process*

This factor generally weighs in favor of transfer when more non-party witnesses reside within the proposed venue than in the plaintiff's chosen venue. *See Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when the proposed venue is said to have "absolute subpoena power." *Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" simply means that all relevant and material non-party witnesses reside within the subpoena power of a particular court. *See Volkswagen II*, 545 F.3d at 316; *Miller v. Longview Psychiatric Hosp., L.L.C.*, No. 2:08-CV-42, 2009 WL 748094 at *3 (E.D. Tex. March 19, 2009).

In this case, several identified non-party witnesses reside in the NDCA while no identified non-party witnesses reside in this District. *See* Dkt. No. 117, Exs. J-N (initial disclosures); Dkt. No. 90, at 6-8. Although Plaintiff points out that some of the non-party witnesses may be affiliated and/or controlled by BSC, there are others, such as the inventor and other relevant witnesses

regarding inventorship of the asserted patent that would be subject to compulsory process in the NDCA. However, neither this District nor the NDCA would have absolute subpoena power over all of the non-party witnesses. *See* Dkt. No. 117, at 2. Accordingly, this factor weighs only slightly in favor of transfer.

### 3. *Cost of Attendance for the Parties and Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. Further, although courts should "assess the relevance and materiality of the information the witness may provide," courts must not consider the "significance of the identified witnesses' testimony." *Genentech*, 566 F.3d at 1343. The relative materiality of witnesses' testimony is irrelevant to this inquiry. *See id.* ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, for the transfer analysis, all potential material and relevant witnesses must be considered as offering testimony of equal importance.

The Fifth Circuit has adopted a "100 mile rule" to assist in analyzing this factor. *See Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 205. When applying the "100 mile rule," the threshold question is whether the plaintiff's chosen venue and the proposed venue are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified relevant witnesses and the two venues

under consideration. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320.

The "100 mile rule" favors transfer (with differing degrees) if the proposed venue is a shorter average distance away from witnesses than the plaintiff's chosen venue. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See Volkswagen I*, 371 F.3d at 204 n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the proposed venue, then this factor will favor transfer. *Id.*

However, the "100 mile rule" should not be rigidly applied. *See Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness should be discounted for purposes of the "100 mile rule" analysis. *Id.* at 1344-45 (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California). Finally, for this factor to weigh in favor of transfer, the proposed venue need not be more convenient for ***all*** of the witnesses. *Genentech*, 566 F.3d at 1345. Rather, this factor "substantially weighs in favor" of transfer when a "substantial number of material witnesses reside in the transferee venue . . . and no witnesses reside in [plaintiff's chosen venue]." *Id.*

In this case, the defendants are located across the country, and their witnesses are similarly spread across the country. *See* Dkt. No. 90, at 9-10; Dkt. No. 117, Exs. J-N. BSC focuses only on a select subset of witnesses to support its conclusion that the NDCA would be more convenient. However, the Court must consider all of the witnesses when making a transfer determination. Because the defendants are geographically dispersed, the Court finds that a transfer to the NDCA, while more convenient for the subset of witnesses BSC notes, would be less convenient for the

numerous witnesses that are located closer to this District. *See* Dkt. No. 117, at 2 (noting that of the 55 witnesses disclosed in the defendants' initial disclosures, 38 of them are located closer to this District than the NDCA). That is, for the witnesses from Minnesota, New Jersey, and Massachusetts, this District is substantially closer mileage-wise and is less costly than the NDCA. Stated alternatively, the Court finds transfer to the NDCA would make it less convenient for more than half of the identified witnesses. Accordingly, this factor weighs against transfer.

    4.    *Practical Problems*

Practical problems include those that are rationally based on judicial economy. *In re Volkswagen of Am., Inc.* (*Volkswagen III*), 566 F.3d 1349, 1351 (Fed. Cir. 2009). Particularly, the existence or creation of duplicative suits in different courts involving the same or similar issues may create practical difficulties that weigh heavily in favor of or against transfer. *Id.*

In this case, the parties raise no practical problems for the Court to consider. Therefore, this factor does not favor transfer.

**B.**    **Public Interest Factors**

    1.    *Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *Genentech*, 566 F.3d at 1347. However, the *Genentech* Court additionally noted that this factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*

In this case, BSC admits that trial time in the NDCA is approximately six months longer than in this District. Dkt. No. 84, at 16 n.2. BSC discounts the difference, however, claiming it is

"inconsequential, particularly where Plaintiff waited over four years after the issuance of the '683 Patent to file this lawsuit." *Id.* Plaintiff argues this six month difference is substantial and that it chose to file suit in this district because of its relatively fast time-to-trial. Dkt. No. 90, at 11.

Given that the parties agree that this District is faster than the NDCA, the only decision left to be made is how much weight to give this factor. The Federal Circuit has cautioned that this factor is the most "speculative" of the factors and that it alone should not outweigh the other factors. Accordingly, the Court finds this factor weighs only slightly against transfer.

    *2.      Local Interest*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the plaintiff's chosen venue); *TS Tech*, 551 F.3d at 1321 (in a patent suit, disregarding local interest of citizens in the plaintiff's chosen venue who used the allegedly infringing products because the products are "sold throughout the United States").

In this case, Plaintiff is a Texas company with its principal place of business in California and an office in Frisco, Texas. Dkt. No. 90, at 2. Defendants are headquartered across the country. Dkt. No. 1. BSC contends California has a greater local interest in this dispute because the BSC products were developed there and sold there. Dkt. No. 84, at 16-17. The Court disagrees. BSC is

not the only defendant in this case. The other Defendants and the Plaintiff must also be factored into this calculus. The products involved in this case are manufactured and sold nationwide; thus, every district in which these devices are sold have a "local interest" in the infringement determination. Likewise, the venues where the parties are chartered and operate have "local interests" in this dispute. As both this District and the NDCA (as well as other venues, such as the District of Massachusetts) have significant local interests in this dispute, the Court finds this factor does not weigh in favor of transfer.

      3.     *Familiarity With the Governing Law*

The parties agree that courts in both venues are familiar with the controlling law. Therefore, this factor does not weigh in favor of transfer.

      4.     *Avoidance of Unnecessary Conflict of Laws Problems*

The parties agree no conflict of law issues are expected in this case. Therefore, this factor does not weigh in favor of transfer.

### III. CONCLUSION

Considering the foregoing factors collectively, the Court concludes BSC has failed to show that the Northern District of California would be clearly more convenient than Thermal Scalpel's chosen venue. Thermal Scalpel is a Texas company with an office in this District. The Defendants are scattered across the country and a transfer to the Northern District of California would, at best, merely shift inconveniences among the Defendants. Accordingly, BSC's Motion to Transfer (Dkt. No. 84) is hereby **DENIED**.

   **IT IS SO ORDERED**.

   **SIGNED this 3rd day of August, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE